UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

  v.

HUGH HAROLD LUSK,

  Defendant.

_____/

Case No. 21-cr-20307-GAD-KGA-1

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER FINDING DEFENDANT IN CRIMINAL CONTEMPT AND IMPOSING THIRTY-DAY CUSTODIAL SENTENCE

### I. INTRODUCTION

On May 5, 2021, a grand jury charged Defendant Hugh Harold Lusk, and his codefendants, with one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 246 and 841(a)(1). ECF No. 1. Lusk was subsequently charged in the First Superseding Indictment with an additional count of aiding and abetting in the distribution of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. ECF No. 75. Lusk has engaged in obstructionism, delay tactics, and other misbehaviors since the commencement of this criminal proceeding. For the

1

following reasons, the Court finds Defendant in criminal contempt and imposes a thirty-day custodial sentence. *See* 18 U.S.C. § 401(1).

## II. PROCEDURAL BACKGROUND

The Court set out much of the relevant procedural background in its March 7, 2022 Order Granting Defense Counsel's Oral Motion to Withdraw as Counsel for Defendant Lusk, Appointing the Federal Community Defender to Assign New Counsel, and Directing the Government to Schedule Arraignment of Superseding Indictment:

> Lusk made his initial appearance on June 24, 2021 before Magistrate Judge Curtis Ivy, Jr. ECF No. 19. The Magistrate Judge appointed the Federal Community Defender, ECF. No. 28, and CJA panel attorney Claude M. Chapman noticed an appearance on Lusk's behalf, ECF No. 30.
>
> Lusk was arraigned before Magistrate Judge Patricia T. Morris on August 20, 2021. ECF No. 58. Nevertheless, on August 25, 2021, he filed, *inter alia*, a "demand for rehearing of arraignment with probable cause," ECF No. 64, PageID.136, and an affidavit for recission of his acknowledgment of the indictment, ECF No. 65, PageID.141. That same day, Chapman filed a Motion to Withdraw as

2

Counsel due to a "complete disconnect regarding how the case is to be handled," Lusk's unilateral filings, and a document wherein Lusk stated he had fired Chapman. ECF No. 63.

The Honorable Arthur J. Tarnow, before whom this case was previously pending, granted Chapman's Motion and appointed the Federal Community Defender to assign new counsel to Lusk. ECF No. 68. He also granted Mr. Lusk's request to be rearraigned with his new attorney. CJA panel attorney Bertram L. Johnson accepted the appointment on August 31, 2021.

On September 14, 2021, the government filed a superseding indictment, which charged Lusk with one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 246 and 841(a)(1), as well as one count of aiding and abetting the distribution of a controlled substance resulting death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. ECF No. 75. [Johnson scheduled arraignment on the First Superseding Indictment via Zoom, but Lusk did not attend, claiming he was suffering from Covid-like symptoms.]

Since his initial appearance, Lusk has filed 23 *pro se* documents with the Court, including an "Affidavit in Motion for Dismissal of Actions" (ECF No. 74). As such, the Government filed a Motion to Deny Hybrid Representation and Strike Defendant's Pro Se Pleading on February 23, 2022. ECF No. 101. This Court held a status conference with the parties on March 7, 2022 to discuss these pending motions and other matters.

During the conference, Lusk indicated that he has since fired Johnson and is representing himself. Johnson made an oral Motion to Withdraw as Counsel for Defendant Lusk pursuant to MRPC 1.16. The Court subsequently held a hearing on the oral Motion during which Johnson stated there has been a breakdown in the attorney-client relationship and shared examples of conflicts he and Lusk have had over defense strategy.

. . .

When asked during the hearing, Lusk would not explicitly state whether he wanted new counsel or to represent himself. Instead, he kept repeating that he is "more than capable of handling his own commercial affairs."

4

ECF No. 108, PageID.505-08.

In addition to refusing to answer the Court's questions, Lusk also disrupted and delayed the motion hearing by repeatedly asking if he could move from the gallery into the well of the courtroom without forming a binding contract, asking the Court if it had any claims against him, walking back to confer with his companions in the audience, asking if he could sit on a particular bench without forming a binding contract, repeatedly asking if the court was on the record, and repeatedly asking the Court to spell its name for the record. Indeed, he was so disruptive that Court ultimately chose not to hear arguments on the oral Motion during the status conference when it was first made. Instead, the Court took a brief recess to allow Lusk's codefendants and their counsel to avoid having to sit through his shenanigans unnecessarily.

Lusk appeared before the Court on March 28, 2022 for another status conference. *See* ECF No. 118. During the conference, Lusk expressed that he would like to terminate his newly appointed counsel, David Nacht, in favor of representing himself. Again, Lusk misbehaved by delaying and disrupting the proceedings. He refused to enter the court room until one of his companions approved him doing so and then proceeded to repeat many of the same behaviors from his previous appearance. He also repeatedly interrupted the Court while it attempted to ask him

5

the questions necessary to establish that he was knowingly waiving his right to counsel. In fact, the Court was only able to get a legitimate answer to one of the questions in the colloquy. Otherwise, Lusk responded with nonsensical "legal" jargon, such as that he was "here for full settlement and closure on the case."

The Court provided notice to Lusk that it has authority to punish him with contempt via summary disposition proceedings if he continued to engage in "misbehavior in the Court's presence that obstructs the administration of justice." 18 U.S.C. § 401(1). Nacht also advised Lusk that if he just calmly answered the Court's questions, he could achieve his goal of representing himself without issue. Instead of heeding the Court's and Nacht's warnings, Lusk continued to refuse to answer the Court's questions regarding his desire to proceed *pro se*. Thus, for the following reasons, the Court finds Lusk in criminal contempt and imposes a thirty-day custodial sentence. *See* 18 U.S.C. § 401(1).

### III. LAW & ANALYSIS

#### A. Criminal Contempt Power

"The power to punish contempt is 'inherent in all courts,' allowing them to protect themselves against assaults on their authority." *United States v. Arredondo*, 349 F.3d 310, 316 (6th Cir. 2003) (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987)). A federal court has the discretionary power to

6

"punish by fine or imprisonment, or both, … such contempt of its authority" caused by a defendant's "[m]isbehavior . . . in [the Court's] presence or so near thereto as to obstruct the administration of justice[,]" or due to the defendant's "[d]isobedience or resistance to [the Court's] lawful writ, process, order, rule, decree, or command." 18 U.S.C. §§ 401(1); (3).

Criminal contempt sanctions require "constitutional protections . . . just as they do in other criminal prosecutions." *Arredondo*, 349 F.3d at 316 (criminal contempt power is constrained by constitutional and statutory limitations); *United States v. Koubritti*, 305 F. Supp.2d 273 (E.D. Mich. Dec. 16, 2003) (noting the Supreme Court's conclusion that "serious" criminal contempt charges, "involving imprisonment of more than six months[,]" require the constitutional protection of a jury trial). While the criminal contempt statute "carries upon its face the purpose to leave the courts ample power to protect the administration of justice against immediate interruption of its business[,]" Congress intended the courts to be "limited, in contempt cases, to 'the least possible power adequate to the end proposed.'" *Vaughn v. Flint*, 752 F.2d 1160, 1166 (6th Cir. 1984) (quoting *In re Michael*, 326 U.S. 224, 227 (1945)).

7

### B. Discussion

Federal Rule of Criminal Procedure 42 governs criminal contempt procedures. *See* Fed. R. Civ. P. 42. A district court "may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies[.]" Fed. R. Crim. P. 42(b); *Arredondo*, 349 F.3d at 316 (recognizing "[t]he narrow category of contempts [sic] committed 'in the actual presence of the court' may be punished immediately by the judge who saw or heard the offending conduct.") (quoting Fed. R. Crim. P. 42(b)); *cf. United States v. Delahanty*, 488 F.2d 396 (6th Cir. 1983) (Rule 42(a) summary disposition unavailable when attorney failed to timely appear for trial because attorney's absence did not occur "in presence" of the district court).

"The contempt order must recite the facts, be signed by the judge, and be filed with the clerk." *Id*. "This summary power is reserved for 'exceptional circumstances . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings.'" *Id.* (quoting *Vaughn*, 752 F.2d at 1167); *see also Pounders v. Watson*, 521 U.S. 982, 988 (1997) ("We have held the summary contempt exception to the normal due process requirements, such as hearing, counsel, and the opportunity to call witnesses, 'includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where

8

all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public.") (quoting *In re Oliver*, 333 U.S. 257, 275 (1948)).

In order to support a conviction under § 401(1), the following must be present, "(1) [t]here must be conduct which constitutes misbehavior; (2) the misbehavior must amount to an obstruction of the administration of justice; (3) the conduct must occur in the court's presence; and (4) there must be some form of intent to obstruct." *Vaughn*, 752 F.2d at 1167.

As to the first element, contemptuous conduct amounting to misbehavior has been found during a defendant's revocation of supervised release hearing when the defendant yelled, "[f]uck y'all[,]" at the conclusion of sentencing. *In re Sealed Case*, 627 F.3d 1235, 1236 (D.C. Cir. 2010) (affirming criminal contempt conviction but reducing sentence to six months, or maximum sentence available for a contempt conviction without a jury trial). This is because, "[t]he court is not a public hall for the expression of views, nor is it a political arena or a street. It is a place for trial of defined issues in accordance with law and rules of evidence, with standards of demeanor for court, jurors, parties, witnesses and counsel." *In re Dellinger*, 461 F.2d 389, 401 (7th Cir. 1972) (quoting *Katz v. Murtagh*, 28 N.Y.2d 234, 240 (1971)).

9

As such, the Seventh Circuit Court of Appeals has stated, "that in courtrooms 'there must be silence, except as the orderly conduct of business calls for speech.'" *Id.* (quoting *United States ex rel. Robson v. Malone*, 412 F.2d 848, 850 (7th Cir. 1969). Thus, the *Dellinger* court found that unnecessary interjections by a litigant who is represented by legally adequate counsel can constitute misbehavior.

The second element under § 401(1) requires "an actual," as opposed to "theoretical" obstruction of the administration of justice. *Vaughn*, 752 F.2d at 1168. "It is not necessary in order to constitute an obstruction that the acts have an 'element of violence, physical force, or vituperation.'" *Id.* (quoting *In re Chaplain*, 621 F.2d 1272, 1277 (4th Cir. en banc), *cert. denied*, 449 U.S. 834 (1980)); *see Vaughn*, 752 F.2d at 1168 (concluding the second prong was satisfied by the defendant's attempt to represent the plaintiffs without a law license in contravention of Michigan law and local court rule); *see also In re Sealed Case*, 627 F.3d at 1236 (rejecting defendant's contention that he did not obstruct the sentencing because "the proceedings were concluded and no other business was being conducted[,]" when the defendant blurted foul language upon learning of the court's sentence because "[s]uch conduct is inherently disruptive.").

The third element requires that the misbehavior occur in the Court's presence. The Sixth Circuit Court of Appeals has construed this element narrowly, concluding

10

an attorney's tardiness during trial proceedings did not occur in the Court's "presence." *See Delahanty*, 488 F.2d at 397 (Rule 42(a) summary disposition unavailable when attorney failed to timely appear for trial because attorney's absence did not occur "in presence" of the district court).

As to the final or intent element, the Sixth Circuit has explained, it must be proven beyond a reasonable doubt that the defendant "acted with a willfulness that implies a deliberate or intended violation, as distinguished frus om an accidental, inadvertent or negligent violation." *Id.* (internal quotation marks and citation omitted). "Whenever counsel or a defendant on trial . . . oversteps the bounds of propriety and refuses to heed the admonitions of the court to obey in the presence of the court a lawful order of the court, he commits an act of contempt." *Jones v. United States*, 151 F.2d 289, 290 (D.C. Cir. 1945).

At the March 28, 2022, status conference, Lusk's misbehavior in the Court's presence obstructed the administration of justice. Lusk has been before this Court twice in the past month and expressed a desire to proceed *pro se*; however, both times, he has refused to answer the Court's questions and establish for the record that he is knowingly and voluntarily waiving his right to counsel. His intent to disrupt these proceedings is evidenced by his constant interruptions.

11

Despite warnings from this Court that he might be found in contempt and advice from Nacht that he could achieve his stated goal by complying with the Court's directives, Lusk continued to disregard the Court's instructions and refused to respond to its questions. Accordingly, the Court finds him in criminal contempt. *See In re Dellinger*, 461 F.2d at 399 (failure to heed instructions of the judge to cease arguing, sit down, and remain quiet may constitute actual obstruction of justice by attorney, and while certain amount of leeway must be permitted, if directive is clear, and if the party understands what is asked of him, he must obey); *United States v. Martin*, 251 F. App'x 979, 982 (6th Cir. 2007) (defendant's repeated interruptions, offensive language, and unsolicited comments—despite repeated warnings to remain quiet—obstructed the administration of justice).

### IV. CONCLUSION

Accordingly, for the reasons articulated above, the Court finds Lusk in criminal contempt for his "misbehavior in the Court's presence that obstruct[ed] the administration of justice" at the March 28, 2022 status conference. 18 U.S.C. § 401(1); *see also United States v. Koubriti*, 305 F. Supp. 2d 723, 740 (E.D. Mich. 2003).

The Defendant is **REMANDED** to the custody of the Attorney General's designated representative for confinement for a period of thirty (30) days in a

12

corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

**IT IS SO ORDERED**.

s/Gershwin A. Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: March 28, 2022

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 28, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

13